# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY CLARK,                          :
                                        :
    **Plaintiff**                        :
                                        :     **CIVIL NO. 3:CV-10-0026**
  **v.**                               :
                                        :     **(Judge Caputo)**
LT. J. FLEMING, *et al.*,                :
                                        :
    **Defendants**                      :


# M E M O R A N D U M

## I.    Introduction

Plaintiff, Jeffrey Clark, an inmate presently incarcerated at the United States

Penitentiary, in Lewisburg, Pennsylvania (USP-Lewisburg), filed this *Bivens*-styled[1]

civil rights action pursuant to 28 U.S.C. § 1331 asserting a conspiracy claim and an

Eighth Amendment excessive use of force claim against several USP-Lewisburg

officials.[2]  Specifically, Mr. Clark alleges that on June 25, 2009, after having an

altercation with his cellmate (Joe Toney), Officer Kulago and Lt. Fleming used

---

[1]  A "*Bivens* action" is a commonly used phrase for describing a judicially created
remedy allowing individuals to seek damages for unconstitutional conduct by federal
officials. This constitutional tort theory was set out in *Bivens v. Six Unknown Named Agents
of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).  It is
the federal counterpart to § 1983 claims brought against state officials.  *Egervary v. Young*,
366 F.3d 238, 246 (3d Cir. 2004)(citing *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 800 (3d
Cir. 2001)).  "[C]ourts have generally relied upon the principles developed in the case law
applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal
officials." *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2]  On January 6, 2011, the Court granted Mr. Clark's motion to voluntarily dismiss
the following "unculpable" defendants: Officer Carpenter; Mr. Lentini; Mr. Hendricks; Lt.
Stewart; Lt. Fosnot; Deputy Captain Snider; Captain Passaniti; Associate Warden Rear;
Assistant Maiorana; Regional Director Dodrill and BOP Director Lappin.  *See* Docs. 38 and
45.  The remaining defendants in this action are:  Lt. Fleming; Lt. Galleta; Officer Kulago;
Unit Manager Brewer and Warden Bledsoe.  *Id.*

excessive force against him while escorting him to a basement holding cell.  Doc. 1,
Compl. at pp. 4-5.[3]  Specifically, he avers CO Kulago slammed his face into a wall
and broke his arm, and that Lt. Fleming choked him and spit on him.  *Id*.  Jeffrey
Clark also alleges that after Physician Assistant (PA) Hemphill advised Lt. Galletta
that Mr. Clark needed additional medical care for his injuries, Lt. Galletta "denied
that request".  *Id*. at p. 5.  Jeffrey Clark claims to have been denied medical
treatment until June 29, 2009 when x-rays revealed his arm was broken.  *Id*.
Although named as defendants, Unit Manager Brewer and USP-Warden Bledsoe
are not mentioned in the Complaint.

Presently before the Court is the defendants' Motion to Dismiss and for
Summary Judgment.  Doc. 25, Mot. to Dismiss and for Summ. J.  The motion
argues: (1) Jeffrey Clark's conspiracy claim should be dismissed for failure to state a
claim; (2) Mr. Clark has failed to demonstrate the personal involvement of either
defendant Bledsoe or Brewer; and (3) there is no material fact in dispute with regard
to Mr. Clark's claims of excessive use of force claim against the defendants as he
admits to have injured himself during his earlier altercation with inmate Toney; and
finally that, (4) Plaintiff fails to state a claim of deliberate indifference to his serious
medical need against Lt. Galletta as he received treatment the day he was injured.
In addition to the declaration of many non-defendants, and portions of Mr. Clark's
medical records, Defendants submit a videotape of Mr. Clark's removal from the G-

---

[3]  Unless otherwise noted, all citations to the record reflect the docket number and
page number assigned by the electronic case filing system (CM/ECF) rather than the page
numbers of the original documents.

block basement holding cell prior to being escorted to another cell in a different location of the facility in support of their motion.  Jeffrey Clark denies ever admitting that anyone other than CO Kulago broke his arm.  Doc. 37, Opp'n to Defs.' Summ. J. Mot. at p. 2.  He also alleges the events of the submitted video tape all occurred after Officer Kulago, and Lt. Fleming assaulted him while escorting him to the G-block basement holding cell.  *Id*.  Mr. Clark adamantly denies any involvement with a use of force team prior to his placement in the basement holding cell.  *Id*. at p. 7.  Additionally, he notes it was only when the use of force team removed him from the holding cell, in preparation to take him to his new housing location, that RN DeLeon (a non-defendant) first medically assessed him, and then only briefly.  *Id.* at 3.  He denies receiving any treatment at that time.  *Id*. at pp. 8 - 9.  Jeffrey Clark also states that he seeks to hold Warden Bledsoe and Unit Manager Brewer liable because they are responsible for the facility or the Special Management Unsit, where the general level of violence is unacceptable.  *Id*. at pp. 12-15.

For the reasons that follow, the defendants' motion to dismiss and for summary judgment will be granted in part, and denied in part.  As there are genuine issues of material fact concerning whether excessive force was used by CO Kulago and Lt. Fleming against Mr. Clark prior to his placement in the basement cell, the defendants' motion for summary judgment will be denied.  However, as there is no dispute of fact as to the alleged conspiracy or denial medical of medical care claim, these claims will be dismissed.  Likewise, as there is no assertion of the personal involvement of Brewer or Bledsoe in the original Complaint, they will be dismissed from the action.

-3-

## II.      Standard of Review

On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), giving the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)). Although detailed factual allegations are not required, *Twombly,* 550 U.S. at 93, 127 S.Ct. at 2200, the complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* ___ U.S. ___, ____, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court " 'is not bound to accept as true a legal conclusion couched as a factual allegation.' " *Id.,* 127 S.Ct. at 1965 (quoted case omitted).

Under Fed.R.Civ.P. 56, the moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  The party opposing

summary judgment "may not rely solely on allegations or denials in its own

pleadings ...." Fed.R.Civ.P. 56(e)(2).  Nor may it rely on statements in briefs. *Smith*

*v. Kyler*, 295 F. App'x. 479, 481 (3d Cir.2008) (per curiam) (nonprecedential)

(quoting *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511-12 (3d Cir. 1994)).

"[R]ather, its response must-by affidavits or as otherwise provided in [Rule 56]-set

out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).  "'The

evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor.'" *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 500-01 (3d Cir. 2010)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986)).


### III.    Statement of Facts

From the pleadings, declarations and exhibits submitted therewith, the

following facts can be ascertained as undisputed.

On June 25, 2009, Defendant Kulago and Officer Carpenter escorted Jeffrey

Clark to a new cell on the G-block housing unit where inmate Toney was housed.

Doc. 34, Defs.' Statement of Material Fact (DSMF) at ¶ 3.   Defendant Kulago

carried Mr. Clark's personal property to the new cell.  *Id.* at ¶ 4.  Per procedure,

Jeffrey Clark was handcuffed behind his back while escorted to his new cell where

inmate Toney, who was also handcuffed behind his back, was already located.

Once placed in the cell, Jeffrey Clark's handcuffs were removed first as he placed his hands through an opening in the cell door. *Id*. at ¶¶ 6 - 10. Once Mr. Clark's restraints were removed, inmate Toney was ordered to come to the door so Officer Carpenter could repeat the procedure and remove Toney's handcuffs. Before inmate Toney's handcuffs were removed, Mr. Clark attacked inmate Toney with a weapon, stabbing him in the back and punching him in the head. *Id*. at ¶¶ 16-17. Officer Carpenter immediately called for assistance and ordered the inmates to stop fighting. *Id*. at ¶ 18. After ignoring several orders from Officer Carpenter, Mr. Clark stopped assaulting Toney, flushed a weapon down the toilet, and then submitted to hand through the door again to be handcuffed. *Id*. at ¶¶ 20 - 23. Prior to placing Mr. Clark in the cell with Toney, there was no indication that Clark posed a risk to Toney. *Id*. at ¶ 24.

Jeffrey Clark was removed from the cell and escorted to a holding cell in the basement of G-block by Lt. Fleming, Lt. Galletta and Senior Officer Kulago. *Id*. at ¶ 28. Lt. Galletta did not observe Lt. Fleming and Officer Kulago threaten or abuse Clark. *Id*. at ¶ 29.

At approximately 11:02 a.m., a use of force team was assembled to move Jeffrey Clark from the basement holding cell in G-block to I-block due to his continued disruptive behavior. *Id*. at ¶¶ 34 - 35. A use of force team is involved in a calculated use of force to move an inmate, normally five staff members are involved in securing the inmate, a Health Services staff member is present to check restraints and assess the inmate medically, and a Lieutenant supervises the move. Doc. 34-

2, Exh. D, Dreese Decl. at ¶ 4.  Lt. Galletta was the supervising Lieutenant of the

use of force team.[4]  Doc. 34-2, Exh. B, Galletta Decl. at ¶ 2.  D. DeLeon, R.N., was

the Health Services staff member assigned to participate in the calculated use of

force event moving Mr. Clark from the holding cell in G-Block housing unit to a cell in

I-Block.  Doc. 34-2, Exh. E, DeLeon Decl.  Nelson Dreese, a Bureau of Prisons

(BOP) Special Investigative Support Technician at USP-Lewisburg operated the

video camera that filmed the use of force team's interaction with Mr. Clark.  Dreese

Decl. at ¶ 2 and Attach. 1, DVD.

Mr. Clark was non-combative when the use of force team arrived at his G-

block holding cell to place him in ambulatory restraints.  Exh. D, Attach. 1, DVD.

The video footage shows Mr. Clark was removed from his cell and held by several

officers while he was stripped searched, redressed, and placed in ambulatory

restraints.  *Id*.  Jeffrey Clark was talking and cooperative throughout the process of

the strip search and application of the ambulatory restraints.  He did not complain of

neck or head discomfort.  *Id*.  He did, however, repeatedly state that his right arm

hurt.  *Id*.; DSMF at ¶ 38.  Once placed in restraints, Jeffrey Clark was medically

assessed and his restraints were checked for proper application.  Exh. D, Attach. 1,

DVD; DSMF at ¶ 37.  The following exchange took place between Nurse DeLeon

and Mr. Clark.

> Clark: "Will you look at my arm, sir?  I think it's broke
> right there, man."
> DeLeon: "Your arm is broke?"

---

[4]  Lt. Galletta is the only member of the use of force team who is named as a defendant in this action.

> Clark: "Right there."
> DeLeon: "What happened?  What happened to your arm?"
> Clark: "The incident that just took place, man."
> DeLeon: "From the fight upstairs?"
> Clark: "Yeah.  Can you check my arm, sir?"

Doc. 34-2, Exh. D, Attach. 1, 11:13:25.  Nurse DeLeon checked Mr. Clark's radial pulse and capillary refill and noted all were good.  *Id*.  He noted Mr. Clark's lower arm was swollen where he complained of pain.  *Id*.  Mr. Clark said he could not move his arm.  *Id*.  Lt. Galletta then gave an order to loosen Mr. Clark's wrist restraints.  *Id*.  Mr. Clark inquired from Nurse DeLeon whether his arm was going to be x-rayed.  *Id*.  Nurse DeLeon responded that he would put an order in for it.  *Id*. The duration of the video is a little over 13 minutes in length ( 11:04:58 - 11:18:00) and concludes with Mr. Clark being escorted away from the G-block basement holding cell.  *Id*.

Nurse DeLeon wrote in Jeffrey Clark's Clinical Encounter that Plaintiff "[d]oes not complain of injuries from calculated use of force but states that his right arm hurts from incident earlier this morning."  Doc. 34-2, Exh. C at p. 15.  The treatment plan reveals that a "New Radiology Request Orders" were written by DeLeon for x-rays of Mr. Clark's ulna and radius to rule out any injury to his arm.  This order was cosigned later that day by Physician Assistant Fransciana.  *Id*. at pp. 15 - 16.

A short time later, at approximately 12:15 p.m., after Jeffrey Clark was moved to his new cell on I-block, a use of force team was convened to change his ambulatory restraints to four point restraints.  DSMF at ¶ 40.  Nurse DeLeon medically assessed Plaintiff after this event.  Doc. 34-2, Exh. C at p. 18.

At 2130 hours, or 9:30 p.m., Mr. Clark refused to allow medical staff to check on his restraints and overall well being. *Id*. at p. 20. Medical staff tried again at 1:00 a.m. to check on his restraints and overall well being, but Mr. Clark refused to allow them to do so. *Id*. at p. 21. On June 29, 2009, radiographs of Plaintiff's arm revealed a closed fracture of the distal end of his ulna. DSMF at ¶ 42. Pain medication and a splint were applied to Mr. Clark's arm. *Id*. at ¶ 44. However, over the next several days Mr. Clark attempted, and on more than one occasion, successfully removed or destroyed his splint. When necessary the splint was reapplied or replaced. *Id*. at ¶¶ 47-55.

IV.     **Discussion**

   A.     **Excessive Use of Force Claim.**

In his Complaint, Mr. Clark states that on June 25, 2009, Officer Kulago and Lt. Fleming used excessive force against him. Doc. 1, Compl. at pp. 4 - 5. In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4)

'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)). The absence of any injury, or evidence of only *de minimis* injuries, is "relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999. To survive a motion for summary judgment on an excessive-force claim, a plaintiff must set forth specific facts showing that force was applied "maliciously and sadistically to cause harm," as opposed to "a good faith effort to maintain or restore discipline." *Id.*

In this case, the summary judgment record shows that there are genuine issues of material fact whether the physical contact between the defendants Kulago and Fleming occurred, and whether it was undertaken in a deliberate attempt to restore discipline or to intentionally inflict pain. The videotape submitted in connection with the defendants' summary judgment motion is incomplete and does not capture the time period when Officer Kulago and Lt. Fleming escorted Mr. Clark from the G-block housing unit to the holding cell in G-block's basement. Additionally, the Court is not persuaded by the reliance defendants place on the videotape to suggest Mr. Clark admitted that he injured his arm during his altercation with inmate Toney.

> Clark: "Will you look at my arm, sir? I think it's broke right there, man."
> DeLeon: "Your arm is broke?"
> Clark: "Right there."

-10-

> DeLeon: "What happened?  What happened to your
> arm?"
> Clark: "The incident that just took place, man."
> DeLeon: "From the fight upstairs?"
> Clark: "Yeah.  Can you check my arm, sir?"

Doc. 34-2, Exh. D, Attach. 1, DVD, 11:13:25.  After careful consideration of the

video in its entirety, and with particular attention to the above cited portion of the

video, the Court cannot reach the same conclusion of fact that defendants have with

respect to Mr. Clark's alleged admission.  Based on the dialogue between Nurse

DeLeon and Mr. Clark, at best what can be confirmed is that the injury resulted from

"an incident" upstairs.  Whether the incident referred to is Mr. Clark's assault of

inmate Toney, or his "fight" or "incident" involving Officer Kulago and Lt. Fleming's

rough escort of him to the basement, is unclear.  The origins of Mr. Clark's broken

arm and the extent of force used by Officer Kulago and Lt. Fleming in transporting

Jeffrey Clark to the basement holding cell cannot be determined on the record

before the Court.  At the summary judgment stage, the Court is required to view the

record in the light most favorable to Mr. Clark and draw all inferences in his favor.

Consequently, Defendants' motion for summary judgment as to Mr. Clark's use of

force claim against Officer Kulago and Lt. Fleming will be denied.


   **B.    Denial of Medical Care Claim**.

   Jeffrey Clark avers that after medical staff advised Lt. Galletta that he needed

medical treatment for his injured arm, "Lt. Galletta then denied that request and [Mr.

Clark] received no medical treatment until June 29th, 2009," when x-rays revealed

his broken arm.  Doc. 1, Compl. at p. 5.

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  *See also* *Rouse v. Plantier*, 182 F.3d 192, 197 (3rd Cir. 1999)(citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).  "If 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Estelle*, 429 U.S. at 103, 114 S.Ct. 346).

A "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice." *Estelle*, 429 U.S. at 107, 97 S.Ct. 285 at 293.  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise

to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). Additionally, a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment from the prison's medical staff. *Id.*

The record reveals the following.  Mr. Clark says the first time he was medically assessed by a health care professional was when Nurse DeLeon saw him in the presence of the use of force team prior to being moved from the basement of G-block to I-block.  *See* Doc. 37, Pl.'s Summ. J. Opp'n Brf. at p. 3 (Plaintiff was seen by RN DeLeon for the first time "before being moved to I-319 from G-block basement ...this is the correct version")(emphasis in original).  Neither party offers any evidence to suggest that Mr. Clark was medically evaluated by a medical practitioner prior to Nurse DeLeon.  This is important because in his Complaint, Mr. Clark avers that it was after a medical professional evaluated him, and recommended additional treatment, Lt. Galletta "denied that request."  Doc. 1, Compl. at p. 5.  Notably,  Lt. Galletta is not a health services professional.  He does not diagnose or treat inmates, or schedule their medical appointments.  *See* Doc. 34-2, Exh. B, Galletta Decl. at ¶ 3.  It is also noted that Lt. Galletta is the only named defendant who was present when the use of force team removed Mr. Clark for the G-block basement holding cell, and placed him in ambulatory restraints.[5]  Doc. 34-2, Exh. D, Attach. 1, DVD.

---

[5]   Nurse DeLeon is not a named defendant.  Doc. 1, Compl.

The videotape before the Court shows Nurse DeLeon was present from the initial assembly of the use of force team at approximately 11:02 a.m. until at least 11:14:21 a.m., as was Lt. Galletta.  Doc. 34-2, Exh. D, Attach. 1, DVD.  Nurse DeLeon was present while the use of force team placed Jeffrey Clark in ambulatory restraints, heard his complaints of arm pain, and questioned him about his injuries. *Id*.  Contrary to Mr. Clark's assertion, Nurse DeLeon did not simply "take one look at [his] arm, pronounced 'he'll live,' and left".  Doc. 37, Pl.'s Summ. J. Opp'n Brf. at p. 4.  Nurse DeLeon was present to observe and evaluate him while the restraints were being applied and adjusted.  Nurse DeLeon's physical examination of Mr. Clark is documented on the video.  Doc. 34-2, Exh. D, Attach. 1, DVD.  After questioning Mr. Clark as to how he injured his arm, and examining him, Nurse DeLeon stated that he would order x-rays of Mr. Clark's arm.  He did not suggest that Mr. Clark needed to be immediately transported to the medical unit.  *Id*.  There is no evidence to suggest that Lt. Galletta influenced, interfered, delayed or disagreed with Nurse DeLeon's treatment decision.  While it is apparent that Mr. Clark takes issue with Nurse DeLeon's decision not to have his arm immediately x-rayed, his disagreement with this non-defendant's medical decision, does not establish an Eighth Amendment deliberate indifference claim against Lt. Galletta. *See* Doc. 37, Pl.'s Summ. J. Opp'n Brf. at pp. 8 - 9 ("What this was, was ... a denial of ANY medical treatment by medical staff.").  There is no evidence on the record to suggest that Lt. Galletta prevented Mr. Clark from receiving medically prescribed

treatment.[6]  Even when construed in the light most favorable to Mr. Clark, the record

before the Court does not establish that Lt. Galletta, "kn[e]w of and disregard[ed] an

excessive risk to [Mr. Clark's] health and safety." *Farmer*, 511 U.S. at 837, 114

S.Ct. at 1979.  Accordingly, the Court grants Defendants' Motion for Summary

Judgment as to Plaintiff's Eighth Amendment medical claim against Lt. Galletta.


### C.     Failure to Allege Any Personal Involvement of Warden Bledsoe or Unit Manager Brewer.

Warden Bledsoe and and Unit Manager Brewer are not mentioned in the

Complaint.  Doc. 1, Compl.  However, in his brief in opposition to defendants' motion

for summary judgment, Jeffrey Clark attempts to assert a general conditions of

confinement claim against them for their deliberate indifference to the inmate-on-

inmate, and staff-on-inmate violence, that allegedly occurs in USP-Lewisburg's

SMU.  Doc. 37, Pl.'s Summ. J. Opp'n Brf. at pp. 12 - 15.  He alleges that SMU USP-

Lewisburg staff routinely "engage[d] in 'human cockfighting'" by allowing inmates to

attack each other, or by allowing staff to attack SMU inmates.  *Id.* at p. 14.  He now

seeks to hold Warden Bledsoe and SMU Unit Manager Brewer liable on this theory.

---

[6]  The record reveals that Mr. Clark was medically assessed by treatment staff after he was moved to I-block and his ambulatory restraints were replaced by four point restraints.  DSMF at ¶40.  Furthermore, also on June 25, 2009, when medical staff sought to check on his restraints and overall well being, Mr. Clark refused medical attention.  *Id.* at ¶ 41.  While it is clear that Mr. Clark disagreed with the medical treatment provided him by non-defendants, there is no evidence that Lt. Galletta interfered with, delayed, or prevented Mr. Clark from receiving medical care or recommended medical treatment by the medical staff.

Defendants respond that Jeffrey Clark may not bring new allegations against Warden Bledsoe and Unit Manager Brewer in his opposition brief.  Defendants are correct.  To the extent that Mr. Clark is attempting to now claim that these defendants failed to protect him from harm, or are responsible for the general conditions of confinement in the SMU, he may not amend his complaint (which did not include such claims) by his response to the defendants' motion to dismiss and motion for summary judgment.  It is well settled that courts need not consider these additional claims.  *See Aldinger v. Spectrum Control, Inc.*, 207 F. App'x 177, 180 n. 1 (3d Cir. 2006) (district court refused to address the plaintiffs' claim that defendant violated the WARN Act by failing to give notice of termination because that issue was raised for the first time in plaintiffs' brief in opposition to the defendant's motion for summary judgment and was not pleaded in their complaint); *see also Grayson v. Mayview State. Hosp.,* 293 F.3d 103, 109, n. 9 (3d Cir. 2002)(noting that "prisoner plaintiff (or any other plaintiff) should not be able to effectively amend a complaint through any document short of an amended pleading").  Thus, as it is inappropriate for Mr. Clark to raise additional allegations against these defendants for the first time in his opposition brief, they will not be considered.

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003).  Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action.

-16-

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003).  A supervisory defendant may be liable if he directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  A civil rights complaint is adequate if it states the conduct, time, place, and persons responsible for the alleged civil rights violations.  *Evancho*, 423 F.3d at 353.  There is no *respondeat superior* liability in § 1983 actions.  *Id.*

Based upon the above legal standards, claims against Warden Bledsoe and Unit Manager Brewer are subject to dismissal.  Neither of these defendants are alleged to have been personally involved in the alleged use of excessive force against Mr. Clark or the alleged denial of medical care.  As such, the allegations of Mr. Clark's Complaint fail to establish their defendant's personal involvement in the alleged illegal acts.

It is well settled that futility constitutes an adequate basis to deny amendment of a claim.  Jeffrey Clark will not be granted leave to file an amended complaint as any such amendment with regards to Jeffrey Clark's claim would be futile and inequitable as they are clearly based on the theory of *respondeat superior*.  *See* Doc. 37,  Pl.'s Summ. J. Opp'n Brf. at pp. 12 - 13 ("Warden Bledsoe is in charge, and D. Brewer makes most cell moves".)  Any attempt to assert a failure to protect him from assault by inmate Toney, this claim would also fail as the record before the Court reveals that there was no indication that placing Mr. Clark into the cell with inmate Toney posed a risk to either inmate's safety.  Doc. 34-2, Exh. A, Carpenter

Decl. at ¶ 15.  Furthermore, the record reveals that Mr. Clark "is admittedly very disruptive, and ... violent," *id*. at p. 15, and that once uncuffed in the SMU cell, produced a 4-5 inch weapon that he used to stab inmate Toney while also punching him in the back of the head.  Inmate Toney was handcuffed at all times.  DSMF at ¶¶ 16-17; *see also* Doc. 37, Pl.'s Summ. J. Opp'n Brf. at p. 2 ("Plaintiff's cellmate ... was still in restraints.")   These facts suggest that Mr. Clark attacked the inmate Toney while he was in restraints.  Thus, even the allegations asserted in Mr. Clark's opposition brief, if allowed to be included in an amended complaint, would be insufficient to show the required personal involvement necessary for stating a claim against Warden Bledsoe or Brewer under *Bivens, supra*.  Thus, Plaintiff will not be permitted to amend his claim as to these two defendants.

### D.    Mr. Clark's Conspiracy Claims.

Jeffrey Clark alleges that "other supervisory defendants et al. did become full aware and participated in the cover-up and false investigations in regards to this incident ..."  Doc. 1, Compl. at p. 5.  Defendants contend that Mr. Clark fails to plead sufficient facts to allege a conspiracy claim.  The Court agrees.

In order for a § 1983 civil conspiracy claim to survive a motion to dismiss, a plaintiff is required "to provide some factual basis to support the existence of the elements of a conspiracy." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009).  Indeed, a plaintiff is required to show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of

law." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993); *see also Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009).  While the Third Circuit Court of Appeals is "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances ..., the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009)(quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)).  The mere conclusory assertion of a conspiracy is insufficient to satisfy the pleading standards under *Twombly*, *supra*; *see also Tindell v. Beard*, 351 F. App'x. 591, 594 (3d Cir. 2009).  Defendants' motion will be granted with respect to the conspiracy claim.

An appropriate order will issue.


/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: March 10, 2011**

-19-

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY CLARK,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-10-0026** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **LT. J. FLEMING,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

**O R D E R**

**AND NOW**, this **10th** day of **March, 2011,** for the reasons set forth in the accompanying Memorandum, it is hereby ordered that:

1.  Defendant's Motion to Dismiss and Motion for Summary Judgment (doc. 25) is granted in part and denied in part.

2.  Defendants' motion for summary judgment (doc. 25) is granted with respect to Plaintiff's Eighth Amendment medical claim against Lt. Galletta.  Lt. Galletta s hereby dismissed from this action.

3.  Defendants' motion to dismiss (doc. 25) with respect to Plaintiff's conspiracy claim against all defendants is granted.

4.  Defendants' motion to dismiss (doc. 25) is granted as to Plaintiff's claims against Warden Bledsoe and Unit Manager Brewer.  Defendants Bledsoe and Brewer are dismissed from this action.

5.      Defendants' motion for summary judgment (doc. 25) with respect to Mr. Clark's Eighth Amendment excessive use of force claim against Officer Kulago and Lt. Fleming is denied.

6.      Defendants Kulago and Fleming are granted twenty-one (21) days from the date of this Order to file an Answer to the Complaint.


                                        **/s/ A. Richard Caputo**
                                        **A. RICHARD CAPUTO**
                                        **United States District Judge**