**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY CLARK,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-10-0026** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **LT. J. FLEMING, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

### I.    Introduction

On January 6, 2010, Jeffrey Clark, an inmate in the custody of the Bureau of

Prisons (BOP, formerly housed at USP-Lewisburg, in Lewisburg, Pennsylvania,[1]

filed this civil rights action claiming violations of his Eighth Amendment rights when

he was removed from his cell after assaulting his cellmate and then transferred to a

basement holding area.  (Doc. 1, Compl.)  On March 10, 2011, the Court granted in

part, and denied in part, the Defendants' Motion to Dismiss and Motion for Summary

Judgment.  *See* Doc. 48.  As a result of our Order, the sole remaining claim is Mr.

Clark's Eighth Amendment excessive use of force claim against Officer Kulago and

Lt. Fleming stemming from a June 25, 2009, incident.  (*Id*.)

Presently before the Court is Defendants' Second Motion for Summary

Judgement.  (Doc. 66, Mot. Summ. J.)  Defendants filed a timely statement of

_____

[1] Mr. Clark is presently housed at ADX Florence, in Florence, Colorado.  (Doc. 50,
Change of Address.)

material facts, exhibits and supporting brief.  *See* Docs. 67-69.  Mr. Clark has failed to oppose the motion or seek an enlargement of time to do so.  For the reasons that follow, the Defendants' unopposed motion will be granted.

## II.     Standard of Review

Pursuant to Fed. R. Civ. P. 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510).  All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party.  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so

one-sided that one party must prevail as a matter of law.  *Liberty Lobby*, 477 U.S. at 251-52, 106 S.Ct. at 2511-12.  In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor.  *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at 2514.  "The non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 231 - 232 (3d Cir. 2001).  "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).  Evidence that would be inadmissable at trial may not be considered at summary judgment. *See Bristol v. Settle*, 457 F. App'x 202, 204 (3d Cir. 2012).  Allegations made without evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).  "Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Blair v. Scott*

*Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002).  Hearsay testimony contained in affidavits or statements that would be inadmissible at trial may not be included in an affidavit to oppose summary judgment.  *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Comp.*, 998 F.2d 1224, 1234 n. 9 (3d Cir. 1993).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

Under the "sham affidavit" doctrine, a district court may disregard an affidavit that contradicts earlier deposition testimony if there is no adequate explanation for the conflict.  *See EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268 (3d Cir. 2010); *see also Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 705 (3d Cir. 1988)(district court properly disregarded conflicting evidence where no explanation was offered for contradictions with prior sworn testimony and where "the affiant was carefully questioned on the issue had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction.") Moreover, a "genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."  *Vantage Mktg., Inc. v. De Amertek Corp., Inc.,* 31 F. App'x 109, 115 (4th Cir. 2002).

## II.  Statement of Material Facts

The summary judgment record is as follows.[2]  On June 25, 2009, Officers Carpenter and Kulago escorted Mr. Clark to a new cell, cell 324, in USP-Lewisburg's G-block housing unit, a segregated housing unit.  (Doc. 67, Defs.' Statement of Material Facts, (DSMF) ¶¶ 1 and 4.)  Inmate Joe Toney was already housed in this cell which is located on the third floor of G-block.  (*Id*. ¶ 2.)

Mr. Clark was in hand restraints with his hands secured behind his back during his escort to cell 324.  (*Id*. ¶ 4.)  Inmate Toney, per normal practice, also placed in hand restraints prior to Mr. Clark entering the cell.  (*Id*. ¶ 5.)  Officer Carpenter opened cell 324, Mr. Clark entered, and the cell door was secured.  (*Id*. ¶¶ 7.)  When both inmates were secured in cell 324, Officer Carpenter ordered Mr. Clark to come to the cell door, and place his hands out the wicket[3] so his hand restraints could be removed.  (*Id*. ¶¶ 8-9.)

Once Mr. Clark's hand restraints were removed, Officer Carpenter ordered inmate Toney to come to the cell door to have his handcuffs removed.  (*Id*. ¶ 12.)  When inmate Toney offered his hands to be uncuffed, Mr. Clark began punching him, produced a weapon and began stabbing him in the back.  (*Id*.)  Officer Carpenter immediately called for assistance and ordered the inmates to stop.  (*Id*. ¶

---

[2] All material facts set forth in Defendants' Statement of Material Facts (Doc. 67) are deemed admitted as Mr. Clark failed to file a counter-statement as required by M.D. Local Rule 56.1.  *See Smith v. Addy*, 343 F. App'x 806, 808 (3d Cir. 2009) (District Court entitled to deem Defendants' statement of facts as admitted due to Plaintiff's failure to file a counter-statement of material facts).

[3] A wicket is similar to a mail slot and one of its purposes is placing and removing hand restraints on an inmate without the need to open the cell door.  (*Id*. ¶ 9.)

13.)  While staff was responding, Mr. Clark ignored Officer Carpenter's order to stop assaulting inmate Toney and continued to stab his cellmate.  (*Id*. ¶¶ 14-15.)  When Lt. Galletta responded to the scene he witnessed Mr. Clark attacking and stabbing inmate Toney.  (*Id*. ¶ 16.)  He also witnessed some of Mr. Clark's punches miss his cellmate and hit the bedframe in his cell.  (*Id*. ¶ 17.)  Officer Carpenter again ordered Mr. Clark to stop and submit to hand restraints.  (*Id*. ¶ 18.)  In response, Mr. Clark walked to the toilet and flushed his weapon before returning to the wicket to be placed in hand restraints.  (*Id*. ¶¶ 18-19.)  During his deposition in this matter, Mr. Clark testified that he attacked inmate Toney by punching him with both his right and left hands, and by stabbing him more than 14 times.  (*Id*. ¶¶ 21-22.)

Both inmates were removed from the third floor cell.  (*Id*. ¶ 25.)  Mr. Clark was escorted to a G-block holding cell in the basement by Lt. Galletta, Lt. Fleming and Officer Kulago.  (*Id*. ¶ 25.)  Lt. Galletta was present during the entire period Lt. Fleming and Officer Kulago escorted Mr. Clark to the holding cell.  (*Id*. ¶ 26.)  Lt. Galletta did not observe either Lt. Fleming or Officer Kulago threaten or physically abuse Mr. Clark.  (*Id*.)  There are no mounted cameras in the G-block stairwell; therefore there is no videotape of Mr. Clark being escorted to the G-block holding cell.  (*Id*. ¶ 29).  Likewise, as this was not a planned use of force event, but rather a rapid response to Mr. Clark's assault of inmate Toney, no hand held camera was immediately available to staff as their first priority was stopping the assault and securing the inmates involved.  (*Id*.)

Mr. Clark continued to be disruptive in the basement holding cell; therefore, a use of force team was assembled at approximately 11:02 a.m. to move him to a different housing unit. (*Id*. ¶ 30.) Plantiff's transfer from the basement of G-block to I-block was filmed.[4] (*Id*.) Upon removing Mr. Clark from the basement G-block holding cell, and placing him in restraints, D. DeLeon, R.N., a member of the use of force team, medically assessed Mr. Clark by checking his restraints for proper application. (DSMF ¶ 31.)

During this process Mr. Clark complained that his right arm was injured and requested medical staff to look at it. (*Id*. ¶ 32.) When Nurse DeLeon asked Mr. Clark "what happened to [his] arm," responded "the incident that just took place, man." (*Id*. ¶ 33.) When Nurse DeLeon asked "from the fight upstairs," Mr. Clark responded "yeah." (*Id*. ¶ 34.) He added "I don't know how it happened, man." (Doc. 69, DVD at 12:18.) At his deposition, Mr. Clark reviewed the portion of the compact disc where Nurse DeLeon asked him what happened to his arm. (DSMF ¶ 35.) He then testified that when Nurse DeLeon asked him what happened to his arm, he told him "the fight upstairs." (*Id*. ¶ 36; Doc. 67-1, Clark Depo., ECF p. 24.) When asked why he told Nurse DeLeon "the fight upstairs," Mr. Clark answered "He asked me a questions and I told him. I answered his question." (*Id*.) When asked "so your right arm hurt from the fight upstairs?" Mr. Clark said "absolutely." (*Id*.) However, in his deposition he also testified that his "arm was absolutely fine until

    [4] Defendants have submitted a copy of this video for the Court's review. (*Id*. ¶ 30; Doc. 69, Ex. 1, DVD.) Mr. Clark has had the opportunity to review this video, in its entirety, at least two times prior to his deposition, and then again on July 20, 2011, during the course of his deposition. (Doc. 67-1, Cunningham Decl. at ¶ 5.)

[he] got downstairs in that basement where there were no cameras and [he] had a confrontation with — well exchange of words, And then [he] was assaulted by Fleming and Kulago." (*Id*. ¶ 27.) Mr. Clark stated that his "arm was broken in G Block basement." (*Id*. ¶ 28.)

At no time during the video taped planned use of force event, transferring Mr. Clark from the G-block basement cell to I-block, did Mr. Clark refer to Lt. Fleming or Officer Kulago or state that either one had assaulted him. (Doc. 69, DVD.) At no time did Mr. Clark advise Nurse DeLeon that any staff member was responsible for the injury to his right arm. (DSMF ¶ 41.)

On June 25, 2009, Mr. Clark was seen by J. Hunter, Staff Psychologist at USP-Lewisburg. (*Id*. ¶ 49.) Mr. Clark never advised the Psychologist that he was assaulted by staff. (*Id*.) Four days later another medical professional, Nurse Hemphill, evaluated Mr. Clark on June 29, 2009. (*Id*. ¶ 43.) Radiographs of Mr. Clark's arm revealed a close fracture of the distal end of his ulna. (*Id*. ¶ 42.) Mr. Clark's arm was splinted and he was provided pain medication and counseled on the importance of maintaining the immobilization of his arm. (*Id*. ¶ 44.) Mr. Clark never told Nurse Hemphill he was assaulted by BOP staff. (*Id*. ¶ 45.)

On June 30, 2009, EMP-Paramedic McClintock provided an injury assessment of Mr. Clark in his housing unit. (*Id*. ¶ 47.) Mr. Clark never advised Mr. McClintock that he was assaulted by staff. (*Id*.)

## III.     Discussion

Plaintiff claims that defendants used excessive force against him and that such force constituted cruel and unusual punishment in violation of the Eighth Amendment.  Defendants contend Mr. Clark's excessive use of force claim is unsupported by the record as he consistently stated he injured his arm "upstairs" during his assault of his cellmate.

In the context of prison confinement, the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.  *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993).   The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  Use of excessive force against an inmate violated the inmate's Eighth Amendment right to be free from cruel and unusual punishment.  *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989).  The core inquiry on an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wilkins v. Gaddy*, _____ U.S. ____, ____ _, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992)).  Not "every malevolent touch by a prison guard gives rise to a federal cause of action"; thus, *de minimis* uses of physical force, provided that force is not "repugnant to the conscience of mankind," does not offend the Constitution."  *Hudson*, 503 U.S. at 9-10, 112 S.Ct. at 1000.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999. "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.' " *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986)).

Guided by these benchmarks, the Court concludes that the Defendants are entitled to summary judgment on Mr. Clark's Eighth Amendment excessive use of force claims since the uncontested facts, which Plaintiff has elected not to dispute, plainly "refute[ ] [an] assertion that defendant[s] used excessive force." *Tindell v. Beard*, 351 F. App'x 591, 596 (3d Cir. 2009)(summary judgment appropriate when undisputed video evidence shows no malicious conduct.) Here, Mr. Clark admits to

assaulting his cell mate by repeatedly pummeling him and stabbing him while in hand restraints. Lt. Galletta saw at least one of Mr. Clark's assaulting blows miss inmate Toney and hit the bedframe in the cell. These events occurred immediately before Lt. Fleming and Officer Kulago escorted Plaintiff to the basement cell in G-block. Additionally, Mr. Clark who had multiple opportunities the day of the incident, and the following days, when he received treatment for his broken arm, never once mentioned that BOP staff was responsible for his injuries. On the videotape and in his deposition, he testified that he injured his arm in the incident "upstairs". (DSMF ¶¶ 33-35.) Yet, he offers no opposition or explanation for his conflicting deposition statements that his "arm was broken in G Block basement" by Defendants Fleming and Kulago." (*Id*. at ¶ 27-28.) Given the opportunity to explain this conflicting testimony in his deposition and again at summary judgment, Mr. Clark elected to remain silent.[5] Mr. Clark cannot create a genuine issue of fact by attempting to blur his videotaped admissions the day of the incident, and his deposition testimony, that he injured his arm "upstairs" by then stating his arm was absolutely fine until he entered the basement of G-block without offering any explanation for this conflicting testimony. He does claim confusion or misunderstanding of any of the questions asked by Nurse DeLeon on the videotape, or suggest his answers were taken out of context or coerced. He simply makes a conflicting and unsupported self-serving

---

[5] Finally, the Court notes that Mr. Clark admitted during the course of his deposition that another inmate prepared the Complaint in this matter on his behalf, with his consent, but without providing him the opportunity to review it before it was mailed. Therefore, he neither formulated the specific allegations against Fleming or Kulago or approved them prior to the filing of the Complaint. (Doc. 67-1, Clark Depo. at ECF p. 25-27.)

statement that his arm was fine until he was in the basement of G-block. Accordingly, the Court finds that Mr. Clark has failed to satisfactorily explain his conflicting testimony during the course of his deposition, and has failed to oppose Defendants' summary judgment motion, thus he has failed to demonstrate that a genuine issue of material fact exists as to his excessive use of force claim.

In sum, after reviewing the undisputed evidence, the Court concludes that no reasonable finder of fact could determine that Defendants Fleming and Kulago acted maliciously or sadistically to cause harm to Mr. Clark. The evidence of record shows that the only injury Mr. Clark suffered was self-inflicted during his unprovoked attack of his cellmate. Since "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain," *Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 322, 106 S.Ct. at 1085), the Defendants are entitled to summary judgment on Mr. Clarks excessive use of force claims.

An appropriate Order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: October __1__, 2012**

-12-